# United States District Court
# District of Massachusetts

TIMOTHY E. CICHOCKI,
      Plaintiff,

      v.                       CIVIL ACTION NO. 2012-10728-GAO

MASSACHUSETTS BAY COMMUNITY COLLEGE,
DR. JOHN O'DONNELL,
ROBIN NELSON-BAILEY,
VALERIE GAINES,
      Defendants.

## *REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION (#5)*

COLLINGS, U.S.M.J.

### *I. Introduction*

On April 24, 2012, plaintiff Timothy Cichocki ("Cichocki") filed an eleven-count complaint (#1) against Massachusetts Bay Community College ("MassBay") and three officials of the college, Dr. John O'Donnell ("O'Donnell"), the President, Robin Nelson-Bailey ("Nelson-Bailey"), the Assistant Vice President of Human Resources, and Valerie Gaines ("Gaines"), the Assistant

Director of Human Resources.  MassBay is Cichocki's employer and a public institution of continuing education in the Commonwealth of Massachusetts. (#1 ¶2; #10 ¶ 19).

Count I of the complaint alleges that MassBay, O'Donnell, and Nelson-Bailey violated the Occupational Safety and Health Act's ("OSHA") prohibition of an unsafe work environment by failing to address Cichocki's "repeated oral and written complaints of [an] unsafe work environment" and taking "actions that exacerbated the already dangerous situation" at Cichocki's workplace. (#1 ¶ 6).  Count II alleges that MassBay, O'Donnell, and Nelson-Bailey violated Title VII of the Civil Rights Act by fostering and exacerbating a hostile work environment and choosing to "overlook the obvious sexual nature of [Professor] Mcfadyen's ruthless, incessant harassments against Cichocki at his workplace." (#1 ¶ 10).  Count III alleges that MassBay, O'Donnell, and Nelson-Bailey violated 18 U.S.C. § 241 and 42 U.S.C.A. § 14141 by issuing a No Trespass Order to Dolly Hwang ("Hwang"), Cichocki's wife, and escorting Hwang off of MassBay's campus after the issuance of the No Trespass Order. (#1 ¶¶ 11-12). Count IV alleges that MassBay, O'Donnell, and Nelson-Bailey violated 18 U.S.C.A. § 1503 by refusing to provide Cichocki and Hwang with the requested police documents in connection with the issuance of the No Trespass Order. (#1

2

¶ 13).

Count V alleges that MassBay and Nelson-Bailey violated 18 U.S.C. § 2511 by intercepting "a number of emails Cichocki sent to his students" and to Nelson-Bailey. (#1 ¶ 14). Count VI alleges that MassBay and Nelson-Bailey violated the anti-retaliation provision of the Fair Labor Standards Act ("FLSA") by refusing to give him his requested job assignment, placing him on "unneeded, unwanted, and unrequested sick leave," and stopping his paycheck in retaliation for his protests of MassBay's No Trespass Order against Hwang and two union grievances against the college. (#1 ¶¶ 15-16). Count VII alleges that MassBay and Gaines committed witness tampering in violation of 18 U.S.C. § 1512 by pressuring Dr. Shinohara, Cichocki's psychologist, "to change his diagnosis of Cichocki" and conducting "hostile interrogations of Dr. Shinohara." (#1 ¶ 17).

Count VIII alleges that MassBay, Nelson-Bailey, and Gaines violated the wage provision of the FLSA by failing to pay Cichocki "according to his work contract agreed upon between his labor union and the college." (#1 ¶ 18). Count IX alleges that MassBay and O'Donnell were negligent in "employing unqualified individuals" such as Professor Mcfadyen, which has "dearly cost the health, marriage, and career of Cichocki." (#1 ¶¶ 18-19). Cichocki also alleges

that MassBay and O'Donnell were negligent in hiring Human Resource employees who are "not only woefully ignorant of employment and workplace laws, but also dangerously lawlessly [sic] in their work related conducts [sic] and decisions." (#1 ¶ 20).

Count X alleges that Nelson-Bailey engaged in criminal harassment and assault on Hwang in violation of Mass. Gen. L. c. 265 §§15A, 14A by demanding that Cichocki discipline Hwang, issuing a No Trespass Order against Hwang, "allowing the college police to force Hwang to leave the campus," and blocking Hwang from attending Cichocki's grievance hearing with the college. (#1 ¶¶ 21-24). Finally, Count XI alleges that Nelson-Bailey "failed to execute Cichocki's work contract pertaining to labor and management relation in good faith according to [the] Fair Labor Standards Act." (#1 ¶ 24). Cichocki alleges that Nelson-Bailey violated his work contract by refusing to execute his grievance hearing in good faith. (#1 ¶ 24).

Presently before the Court is Cichocki's motion for a preliminary injunction. (#5). Cichocki is asking the Court to order MassBay to "i) either withdraw, and timely notify the withdrawal of, the 'Trespassing Notice' it issued on August 11, 2011 against the plaintiff's wife, Y. Dolly Hwang ... ii) or go to court to seek a restraining order against Y. Dolly Hwang within 20 days of

receiving this order before taking any actions to bar her from accessing the college campus." (#5 ¶ 2).  Cichocki is also asking the Court to order MassBay "to restore the plaintiff's employment right, under the Fair Labor Standards Act, to be paid in full, and in time of [sic] his faculty salary, and to [restore] his employee benefits as contracted by his full-time MCCC [sic] faculty union collective bargaining agreements, and as mandated by the anti-retaliation clause in [the] Fair Labor Standards Act." (#5 ¶ 3).

MassBay has filed an opposition to Cichocki's preliminary injunction motion together with fourteen exhibits. (#10).  With the record now complete and after a hearing[1], the motion for a preliminary injunction is in a posture to be addressed.

## II. Factual Background

Plaintiff Cichocki is a resident of Boston, Massachusetts. (#1 ¶ 1). Cichocki has been employed with MassBay, a Commonwealth of Massachusetts educational institution, since 1992 as a Professor of Engineering. (#1 ¶¶ 2; #10 ¶ 4).  Defendant, MassBay, is one of fifteen community colleges within the Commonwealth's system of public institutions of higher education. (#10 ¶19).

---

[1]

The parties filed supplementary materials after oral argument was heard on November 29, 2012. *See*, ##26-30.

Cichocki's wife, Hwang, is a former employee of MassBay, and Professor Helen McFadyen is a Professor of Computer Science at MassBay. (#10 ¶ 4). Until recently, Professor Cichocki and Professor McFadyen had offices near each other at MassBay (#1 ¶ 7; #10 ¶ 4).

In May 2011, McFadyen told Nelson-Bailey that she had received "concerning and unwelcome" emails from Cichocki that contained unwanted sexual undertones, including one from Cichocki's email address stating "I still can feel your body and smell of your neck." (#10 Nelson-Bailey Aff. ¶ 2; #10 Exh. 1). Cichocki claims that during this time, he also "disclosed his suffering [sic] hostile harassments at the hands of McFadyen." (#1 ¶ 7). During a meeting with Nelson-Bailey, Gaines, and Dean Samar Sampan, Cichocki denied sending the emails to McFadyen but was elusive regarding the possibility that his wife had sent them from his email account. (#10 ¶ 6). Cichocki was then informed about MassBay's anti-harassment and retaliation policies, but Cichocki and Hwang continued to contact McFadyen. (#10 ¶ 10; #10 Exh. 4, 8). Professor McFadyen continued to communicate her fear of Cichocki and Hwang to Nelson-Bailey, and MassBay subsequently issued a No Trespass Order barring Hwang from entering the college's campus. (#10 ¶ 11; #10 Exh. 7). After the issuance of the No Trespass Order, campus police found Hwang on campus with

6

Cichocki in his classroom where a class was in progress and asked her to leave. (#10 ¶ 12).

On December 14, 2011, Cichocki informed MassBay in writing that it was absolutely necessary for his wife to accompany him to work at the school and if the No Trespass Order against Hwang was not resolved, the "resulting stress" would necessitate him to request sick leave effective December 14, 2011. (#10 ¶ 13; #10 Exh. 10; #7 Exh. B2).  On December 15, 2011, MassBay informed Cichocki that his request for sick leave was granted "through the end of the semester pending receipt of medical documentation" to support his request. (#10 ¶ 14; #10 Exh. 13).  Although Professor Cichocki submitted a Discharge Order from Massachusetts General Hospital and a letter from Dr. Sumio Shinohara (#12 Exh. 14), he failed to submit the additional documents and information requested by MassBay to support his request to remain on paid sick leave. (#10 ¶ 14).  After notifying Cichocki of the additional documents that were required and when Cichocki still failed to produce the requested documents, MassBay placed Cichocki on leave without pay and without group medical insurance. (#10 ¶ 15; #10 Gaines Aff. ¶ 8, 9; #10 Exh. 14).

Despite the documents in the record indicating otherwise, notably, Cichocki's own Exhibit B1, Cichocki claims that his placement on sick leave was

"unneeded, unwanted, and unrequested." (#1 ¶ 15). He also claims that the reduction in and ultimate discontinuation of his paycheck was in retaliation for the union grievances he filed against the college. (#1 ¶ 15, 16).

### III. The Applicable Law

### A. *Pro Se* Plaintiff

Cichocki filed his complaint and motion for a preliminary injunction *pro se*. While pro se pleadings are to be liberally construed,

> 'pro se status does not insulate a party from complying with procedural and substantive law.' *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir.1997). Even under a liberal construction, the complaint must adequately allege the elements of a claim with the requisite supporting facts. *See id.*

*Chiras v. Associated Credit Services, Inc.*, No. 12-10871-TSH, 2012 WL 3025093, *1 n.1 (D. Mass. July 23, 2012).

In addition, the pleadings must be such that the defendant is "afforded both adequate notice of any claims asserted against him and a meaningful opportunity to mount a defense." *Diaz-Rivera v. Rivera-Rodriguez*, 377 F.3d 119, 123 (1st Cir. 2004)(internal quotation marks and citations omitted). At a minimum, "the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." *Educadores Puertorriquenos En Accion*

*v. Hernandez,* 367 F.3d 61, 68 (1ˢᵗ Cir. 2004).

## B. Standard for a Preliminary Injunction

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997)(quotation marks and citation omitted; emphasis in original). The First Circuit has consistently reiterated the familiar standard to be applied when considering the propriety of issuing a preliminary injunction:

> In order for a court to grant this type of relief, a plaintiff must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that the injunction is in the public interest.

*Peoples Federal Savings Bank v. People's United Bank*, 672 F.3d 1, 9 (1ˢᵗ Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.,* 645 F.3d 26, 32 (1ˢᵗ Cir. 2011)(quoting *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)).

As the First Circuit has recently reiterated, "[t]hough each factor is important, we keep in mind that the sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity."

*Sindicato Puertorriqueno de Trabajadores v. Fortuno* , 699 F.3d 1, 10 (1st Cir. 2012)(internal quotation marks, alteration and citation omitted); *see also Borinquen Biscuit Corp. v. M.V. Trading Corp,,* 443 F.3d 112, 115 (1st Cir. 2006)( "[w]hile all of these factors must be weighed, the cynosure of this four-part test is... the movant's likelihood of success on the merits."); *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir. 1993) ("The *sine qua non* of [the four-factor] formulation is whether the plaintiffs are likely to succeed on the merits.").

## IV. Discussion

### A. Likelihood of Success on the Merits

The defendants have challenged the plaintiff's motion for a preliminary injunction on numerous fronts, but the place to begin is with the first criterion, the likelihood that Cichocki will succeed on the merits.  Since Cichocki's motion for a preliminary injunction does not specify which counts correspond to each requested form of relief, the Court will address each count separately.  In addition, since the motion for a preliminary injunction is directed only against MassBay, the Court will not specifically deal with the likelihood of success on

Cichocki's claims against the other defendants.

## Count I - OSHA Safe Work Environment

Cichocki alleges that MassBay, O'Donnell, and Nelson-Bailey violated OSHA's prohibition of an unsafe work environment by failing to address Cichocki's "repeated oral and written complaints of [an] unsafe work environment" and taking "actions that exacerbated the already dangerous situation" at Cichocki's workplace. (#1 ¶ 6).

Cichocki will not succeed on this claim because OSHA does not create a private right of action. Enforcement of the provisions of OSHA, 29 U.S.C. §§ 651-678 (2000), is reserved for the United States Secretary of Labor. *See* 29 U.S.C. § 658 (authorizing the Secretary to issue citations for violations of occupational safety and health standards and to establish reasonable time for abatement); 29 U.S.C. § 662 (authorizing Secretary to file petition for injunctive relief to restrain imminent workplace dangers). Title 29 U.S.C. § 660(c)(2) specifically states:

> Any employee who believes that he has been discharged or otherwise discriminated against by any person in

> violation of this subsection may, within thirty days after such violation occurs, file a complaint **with the Secretary** alleging such discrimination. Upon receipt of such complaint, **the Secretary** shall cause such investigation to be made as he deems appropriate. If upon such investigation, **the Secretary** determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person.

Emphasis supplied.

In short, since Cichocki cannot maintain a private cause of action against MassBay pursuant to OSHA, *see, e.g., Cabana v. Forcier,* 148 F. Supp.2d 110, 115 (D. Mass. 2001) (citing *Elliot v. S.D. Warren Co.*, 134 F.3d 1, 4 (1st Cir. 1998)), he is unable to demonstrate that this claim is likely to succeed on the merits.

## Count II - Title VII of Civil Rights Act

Cichocki alleges that MassBay, O'Donnell, and Nelson-Bailey violated Title VII of the Civil Rights Act by fostering and exacerbating a hostile work environment in connection with the alleged sexual harassment from Professor McFadyen (#1 ¶10). Title VII prohibits sex-based discrimination that creates a hostile or abusive work environment. *Billings v. Town of Grafton*, 515 F.3d 39,

47 (1st Cir. 2008). However, "[j]udicial recourse under Title VII ... is not a remedy of first resort." *Morales-Vallellanes v. Potter*, 339 F.3d 9, 18 (1st Cir. 2003). Rather, "Title VII requires exhaustion of administrative remedies as a condition precedent to suit in federal district court." *Jensen v. Frank*, 912 F.2d 517, 520 (1st Cir. 1990). Title 42 U.S.C. § 2000e-16(c) clearly states that a civil claim may be brought within 90 days of notice of final action being taken by an administrative department, agency or unit, or after 180 days from the filing of an initial charge if there is a failure to take action on the administrative complaint. Thus an "employee may commence a civil action against [his] employer if, and only if, the EEOC has dismissed the administrative complaint or has itself failed to begin a civil action within 180 days of the original EEOC filing." *Jorge v. Rumsfeld*, 404 F.3d 556, 564 (1st Cir. 2005)(footnote omitted).

The record does not contain any indication that Cichocki filed a complaint with the Equal Employment Opportunity Commission ("EEOC") prior to filing the present action against the defendants. Further, Cichocki's complaint and motion do not satisfy the pleading requirements for a Title VII cause of action.

It appears as though Cichocki is seeking to hold MassBay, O'Donnell, and Nelson-Bailey liable under Title VII for the sexual harassment he claims to have endured from Professor McFadyen. To prevail on a claim of hostile work environment due to sexual harassment under Title VII, a plaintiff must demonstrate:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

*Forrest v. Brinker Int'l Payroll Co., LP*, 511 F.3d 225, 228 (1st Cir. 2007) (citing *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 395 (1st Cir. 2002)).

Cichocki's complaint and motion for a preliminary injunction fail to demonstrate that his claim is likely to succeed on the merits pursuant to the above-referenced criteria of Title VII. Nowhere does he plead the nature of the alleged unwelcome sexual harassment, demonstrate that the harassment was

based on sex, or sufficiently describe how the sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and that he did in fact did perceive it to be so.

In sum, Cichocki's failure to demonstrate that he has exhausted his administrative remedies and the pleading deficiencies in his complaint and motion render him unable to establish that his Title VII claim is likely to succeed on the merits.

### Count III - Violation of 18 U.S.C. § 241 and 42 U.S.C. § 14141

Cichocki alleges in Count III that MassBay, O'Donnell, and Nelson-Bailey violated 18 U.S.C. § 241 and 42 U.S.C. § 14141 by issuing a No Trespass Order to Hwang, Cichocki's wife, and escorting Hwang off of MassBay's campus after the issuance of the No Trespass Order. (#1 ¶¶ 11-12).   These statutes create criminal liability, and as a private citizen, Cichocki lacks a judicially cognizable interest in the federal prosecution of another. *See, e.g.*, *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *accord Keenan v. McGrath*, 328 F.2d 610, 611 (1st Cir. 1964)("Not only are we unaware of any authority for permitting a private

individual to initiate a criminal prosecution in his own name in a United States District Court, but also to sanction such a procedure would be to provide a means to circumvent the legal safeguards provided for persons accused of crime ..."); *see also Nieves-Ramos v. Gonzalez-De-Rodriguez*, 737 F. Supp. 727, 728 (D. P.R. 1990) (same); *Alldredge v. Schwarzenegger*, 2010 WL 3749440, *3 (C.D. Cal. Sept. 21, 2010) ("To the extent Petitioner seeks an order of some sort initiating criminal proceedings against anyone, he states no claim. Private citizens may not initiate criminal actions).

Title 18 U.S.C. § 241 prohibits conspiracies "to injure, oppress, threaten, or intimidate any person...in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States." Only the United States Attorney can initiate a proceeding under this statute. *Cok v. Cosentino,* 876 F.2d 1, 2 (1st Cir. 1989) (*per curiam*) (stating that only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241-242). Title 42 U.S.C. § 14141 makes it unlawful for a government actor "to engage in a pattern or practice of conduct by law enforcement officers... that deprives

persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 42 U.S.C. § 14141(a). The statute explicitly limits the right to bring a cause of action thereunder to the Attorney General of the United States: "Whenever the Attorney General has reasonable cause to believe that a violation... has occurred, the Attorney General... may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice." 42 U.S.C. § 14141(b). A private citizen, therefore, does not have standing to initiate a cause of action pursuant to this statute.

It is manifest that Cichocki is unlikely to succeed on the merits of these claims.

### Count IV - Violation of 18 U.S.C. § 1503

Count IV alleges that MassBay, O'Donnell, and Nelson-Bailey violated 18 U.S.C. § 1503 by refusing to provide Cichocki and Hwang with the requested police documents in connection with the issuance of the No Trespass Order against Hwang. (#1 ¶ 13). Again, 18 U.S.C. § 1503 is a criminal statute that prohibits jury tampering, witness intimidation, and obstruction of justice. As

with Count III, Cichocki does not have standing to initiate a criminal proceeding against another person.   Moreover, a private civil right of action under this particular statute has not been recognized. *Harberson v. Hilton Hotels Corp.,* 616 F. Supp. 864, 866 (D.C. Colo. 1985)("All the courts that have considered the issue have held that § 1503 does not create a private claim for relief."); *Mainelli v. Providence Journal Co.*, 207 F. Supp. 453, 456 (D.R.I.)("Section 1503, being a penal statute passed in the interest of the public, does not create any federal cause of action in favor of any person claiming to have been damaged by another's violation of its provisions."), *aff'd in part and vacated in part on other grounds*, 312 F.2d 3 (1st Cir. 1962).

## Count V - Violation of 18 U.S.C. § 2511

Count V alleges that MassBay and Nelson-Bailey violated 18 U.S.C. § 2511 by intercepting "a number of emails Cichocki sent to his students" and to Nelson-Bailey. (#1 ¶14). While, as stated above, a private citizen does not have standing to initiate a criminal action against another, the post-ECPA Wiretap Act provides a private right of action against one who "intentionally intercepts, endeavors to

18

intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a); *see* 18 U.S.C. § 2520 (providing a private right of action).

The First Circuit has held that in order to establish a claim under Title I of the ECPA, a plaintiff must demonstrate "that a defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device." *In re Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003).

Cichocki's complaint merely states "For weeks following December 14, 2011, Mass Bay intercepted a number of emails Cichocki sent to his students" and "Mass Bay also intercepted an e-mail Cichocki sent to defendant Nelson-Bailey." (# 1 ¶ 14). Since Cichocki has not pled sufficient facts to satisfy any of the above-referenced criteria to maintain a cause of action pursuant to 18 U.S.C. § 2511, he has failed to demonstrate that he is likely to succeed on the merits for this claim. More important for present purposes, even if a claim was stated, these allegations are unrelated to the prayer for injunctive relief and would not

support the grant of same.

### Count VI - Violation of the FLSA's Anti-Retaliation Provision

Count VI alleges that MassBay and Nelson-Bailey violated the anti-retaliation provision of the Fair Labor Standards Act ("FLSA") by refusing to give him his requested job assignment, placing him on "unneeded, unwanted, and unrequested sick leave," and reducing and ultimately stopping his paycheck in alleged retaliation for his two union grievances and protests of MassBay's No Trespass Order against Hwang. (#1 ¶¶ 15-16 ).

The FLSA's anti-retaliation provision prohibits an employer from penalizing an employee who seeks to enforce rights guaranteed by federal law. *See* 29 U.S.C. § 215(a)(3). Cichocki's FLSA claim does not appear likely to succeed on the merits in federal court due to the First Circuit's recognition that a non-consenting state cannot be sued in a federal venue by public employees who seek to enforce the penalty provisions of the FLSA. *Mills v. Maine*, 118 F.3d 37, 49 (1st Cir. 1997); *Jusino Mercado v. Commonwealth of Puerto Rico*, 214 F.3d 34, 40 (1st Cir. 2000)(holding "the FLSA does not divest the states' Eleventh Amendment

immunity.")

Generally, states are immune from claims brought by private persons in federal court. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). However, "[a] state can waive its Eleventh Amendment immunity to suit in three ways: (1) by a clear declaration that it intends to submit itself to the jurisdiction of a federal court or administrative proceeding; (2) by consent to or participation in a federal program for which waiver of immunity is an express condition; or (3) by affirmative conduct in litigation." *New Hampshire v. Ramsey*, 366 F. 3d 1, 15 (1st Cir. 2004)(internal citations omitted). Generally, "waiver by litigation conduct requires a showing that a state has voluntarily invoked the jurisdiction of the federal courts." *Bergemann v. R.I. Dep't of Envtl. Mgmt.*, 665 F.3d 336, 340 (1st Cir. 2011)(internal quotation marks, citation and alteration omitted). A state voluntarily invokes federal jurisdiction when, for example, it files a claim in the bankruptcy court, or when it chooses to intervene in federal-court litigation. *Id.*

The record does not indicate that the Commonwealth of Massachusetts has voluntarily invoked the jurisdiction of this Court. Therefore, the

Commonwealth's Eleventh Amendment immunity appears to govern and preclude the present FLSA claim in federal court.

It is worth noting that the Court in *Seminole Tribe* held that jurisdiction may exist when a suit seeks only prospective injunctive relief "in order to end a continuing violation of federal law." *Seminole Tribe,* 517 U.S. at 73 (internal quotation marks and citation omitted). However, although Cichocki appears to allege a continuing violation, "the FLSA only authorizes the Secretary of Labor to seek injunctive relief, limiting employees to suits for unpaid wages and liquidated damages." *Mills*, 118 F.3d at 55; *see also Seminole Tribe*, 517 U.S. at 74 ("[W]here Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young*."); *Vega Castro v. Puerto Rico*, 43 F. Supp.2d 186, 191 (D.P.R. 1999) ("[T]he FLSA permits an action seeking injunctive relief to be maintained only by the Secretary of the United States Department of Labor."), *aff'd. sub nom. Jusino Mercado v. Commonwealth of Puerto Rico*, 214

F.3d 34 (1st Cir. 2000). For this reason, Cichocki is unlikely to succeed in bringing a cause of action under the FLSA for injunctive relief.

In addition to the jurisdictional problem, Cichocki's FLSA claim is conclusory in nature and therefore fails to satisfy the pleading requirements for an FLSA claim. The essential elements of a FLSA retaliation claim comprise, "at a minimum, a showing that (1) the plaintiff engaged in statutorily protected activity, and (2) his employer thereafter subjected him to an adverse employment action (3) as a reprisal for having engaged in the protected activity." *Blackie v. State of Maine*, 75 F.3d 716, 722 (1st Cir. 1996). The third element is significant since it mandates that "a plaintiff must proffer evidence from which a reasonable factfinder could infer that the employer retaliated against him for engaging in the protected activity." *Id.* at 723. Further, the FLSA does not provide a "shield against legitimate employer actions." *Id.* at 724.

With the above-referenced elements in mind, "[t]o fall within the scope of the [FLSA's] antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and

context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, - U.S. -, 131 S. Ct. 1325, 1335 (2011).   Cichocki's complaint contains only conclusory statements in support of his FLSA anti-retaliation claim. In addition, Cichocki's own exhibit contradicts his statement in the complaint that his placement on sick leave was "unrequested." (#1 ¶16). Exhibit B2 of Cichocki's affidavit demonstrates that in a written letter to O'Donnell and Nelson-Bailey on December 14, 2011, he requested that the school administration resolve the Trespass Order against Hwang and stated that "[i]f the above requested resolutions would not be granted, the resulting stress on me would necessitate me to request sick leave effective tomorrow, December 14, 2011." (#7 Exh. B2).

In sum, due to the Commonwealth's Eleventh Amendment immunity and the pleading deficiencies in Cichocki's complaint and motion, Cichocki is unable to demonstrate that his FLSA claim is likely to succeed on the merits.

### Count VII - Violation of 18 U.S.C. § 1512

Count VII alleges that MassBay and Gaines committed witness tampering

in violation of 18 U.S.C. § 1512 by pressuring Dr. Shinohara, Cichocki's psychologist, "to change his diagnosis of Cichocki" and conducting "hostile interrogations of Dr. Shinohara." (#1 ¶17).  Title 18 U.S.C. § 1512 is a federal criminal statute that prohibits the obstruction of justice by tampering with a witness in a pending federal proceeding. As discussed above, as a private citizen, Cichocki does not have standing to initiate a criminal action against another. *Keenan*, 328 F.2d at 611. Further, 18 U.S.C. § 1512 does not provide for a private cause of action. *See Reilly v. Concentrex, Inc.*, No. CIV 99-983-HU, 1999 WL 1285883 (D. Or Nov. 19, 1999) (no private cause of action under Section 1512); *Gipson v. Callahan*, 18 F. Supp.2d 662, 668 (W.D. Tex. 1997) (same); *Naehu v. Provest,* No. CIV. 97-00262 ACK, 1997 WL 1037947, *2 (D. Hi. Aug. 12, 1997) (same).

Since Cichocki does not have standing to initiate a cause of action under 18 U.S.C. § 1512, he is unable to demonstrate that this claim is likely to succeed on the merits.

## Count VIII - Violation of the Fair Labor Standards Act

Count VIII, labeled "Failure to pay an employee prohibited by Fair Labor Standards Act" (#1 ¶17), alleges that MassBay, Nelson-Bailey, and Gaines violated the FLSA. For this claim, Cichocki merely states that "[s]tarting March 1, 2012, the college has failed to pay Cichocki according to his work contract agreed upon between his labor union and the college." (#1 ¶18)

As discussed at length above, a non-consenting state cannot be sued in a federal venue by public employees who seek to enforce the penalty provisions of the FLSA. *Mills*, 118 F.3d at 49. Since the FLSA does not divest the Commonwealth's Eleventh Amendment immunity and the record does not demonstrate that the Commonwealth has consented to the present action, Cichocki is unable to demonstrate that his FLSA claim is likely to succeed on the merits.

## Count IX - Negligence

Count IX alleges that MassBay and O'Donnell were negligent in "employing unqualified individuals" which "dearly cost the health, marriage, and career of Cichocki." (#1 ¶¶18-20). Massachusetts has created a statutory scheme through

the Massachusetts Tort Claims Act ("MTCA"), Mass. Gen. L. c. 258, for torts allegedly committed by public officers and entities. Under the MTCA, "no . . . public employee ... shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment." Mass. Gen. L. c. 258 § 2. "The public employer, however, is liable for such an injury or death as if it were a private individual, subject to certain exceptions." *Taplin v. Town of Chatham*, 390 Mass. 1, 2, 453 N.E.2d 421, 422 (1983); *see Consolo v. George,* 835 F. Supp. 49, 52 (D. Mass. 1993).

The relevant sections of Mass. Gen. L. c. 258 provide: "Public employers shall be liable . . . in the same manner and to the same extent as a private individual. . . . The superior court shall have jurisdiction of all civil actions brought against a public employer." Mass. Gen. Laws c. 258 §§ 2, 3. The Supreme Court has held that "in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court*." *Atascadero*

*State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985) (emphasis in original), *abrogated in part by statute as noted in Cousins v. Dole*, 674 F. Supp. 360, 362 (D. Me. 1989).

Even prior to the Supreme Court's holding that a state's waiver of its Eleventh Amendment immunity must be explicit as to federal courts, the following question was certified to the Supreme Judicial Court: "Does Massachusetts General Laws Chapter 258 by its terms, either expressly or impliedly, indicate the Commonwealth's consent to suit by citizens in federal as well as state courts, thereby waiving its eleventh amendment immunity?" *Irwin v. Commissioner of Dep't of Youth Servs.*, 388 Mass. 810, 811, 448 N.E.2d 721, 722 (1983). The Supreme Judicial Court responded "that it does not." *Id.*   The First Circuit has subsequently held that "[b]y enacting the Massachusetts Tort Claims Act, the Commonwealth has not waived its Eleventh Amendment immunity to suit in federal court." *Caisse v. DuBois*, 346 F.3d 213, 218 (1st Cir. 2003)(citing *Rivera v. Massachusetts*, 16 F. Supp.2d, 84, 87-88 (D. Mass. 1998)(further citation omitted)).

With respect to Count IX, the Commonwealth's Eleventh Amendment immunity appears to preclude Cichocki's negligence claims in federal court against MassBay.   Therefore, Cichocki is unable to demonstrate that this count is likely to succeed on the merits.

## Count X - Criminal Harassment and Assault

## (Mass. Gen. L. c. 265 §§43A, 15A)

Count X alleges that Nelson-Bailey violated Mass. Gen. L. c. 265 §§ 43A, 15A by engaging in "criminal harassment and assault on Cichocki's wife." (#1 ¶¶ 20-24). Mass. Gen. L. c. 265 § 43A is a criminal harassment statute and Mass. Gen. L. c. 265 § 15A criminalizes assault and battery with a dangerous weapon.

As discussed above, as a private citizen, Cichocki does not have standing to initiate a criminal action against another. *Keenan*, 328 F.2d at 611.  Cichocki is therefore unable to demonstrate that he is likely to succeed on the merits for these claims.

## Count XI - Violation of Fair Labor Standards Act

Count XI alleges that Nelson-Bailey "failed to execute Cichocki's work

contract pertaining to labor and management relation[s] in good faith according to [the] Fair [L]abor Standards Act" by refusing to execute Cichocki's grievance hearing in good faith. (#1 ¶¶ 24-25). As discussed at length above, a non-consenting state cannot be sued in a federal venue by public employees who seek to enforce the penalty provisions of the FLSA. *Mills*, 118 F.3d at 49. Since the FLSA does not divest the Commonwealth's Eleventh Amendment immunity and the record does not demonstrate that the Commonwealth has consented to the present action, Cichocki is unable to demonstrate that his FLSA claim is likely to succeed on the merits.

### B. Irreparable Harm, Balance of Equities, and Public Interest

Cichocki has failed to establish that any of his eleven claims are likely to succeed on the merits. Since this criterion weighs the heaviest in the decisional scales with respect to his eligibility for a preliminary injunction, the consideration of the other three criteria require only *brevis* discussion. It does not appear that any damage suffered by the plaintiff cannot be compensated by money damages, the balance of equities do not tilt in plaintiff's favor and it is not

in the public interest to award injunctive relief in all the circumstances recited herein.

## V.  *Recommendation*

For all of the reasons stated, I RECOMMEND that the Plaintiff's Application For A Preliminary Injunction (#5) be DENIED.  I FURTHER RECOMMEND that, based on the analysis contained herein, that the Court issue an Order granting the plaintiff twenty-one (21) days to show cause in writing why his complaint should not be dismissed in its entirety for failing to state claims upon which relief may be granted.

## VI.  *Review by the District Judge*

The parties are hereby advised that any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of

Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review.  *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ *Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

January 14, 2013.